■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC MUSIAL, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Miller, J.),

rendered October 16, 1984, convicting him of assault in the first degree, assault in the third degree, riot in the second degree, and discrimination (three counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which sought the suppression of identification evidence.

Judgment affirmed.

Viewing the evidence, which included unequivocal eyewitness testimony by two disinterested witnesses, one a 23-year veteran of the New York City Police Department and the other a minister, in the light most favorable to the People, as we are obliged to do at this stage of the proceedings, and giving it the benefit of every reasonable inference to be drawn therefrom (see, People v Giuliano, 65 NY2d 766, 768; People v Malizia, 62 NY2d 755, 757, cert denied 469 US 932; People v Kennedy, 47 NY2d 196, 203), the defendant's active participation in a brutal, racially motivated mob assault upon three black men was proven beyond a reasonable doubt.

The defendant's contention that there was no probable cause to arrest him is without merit. The police officers arriving at the scene of the assault arrested one Joseph Wiggins after speaking with James Green, the off-duty police officer who was an eyewitness to the assault. The police drove Wiggins a short distance to the location where two victims of the assault had retreated. There, both assault victims identified Wiggins as one of the assailants. While en route to the station house, Wiggins was asked by the police who was with him at the time of the assault and he named the defendant. At the precinct, Wiggins repeated his statement. At about 1:30 A.M., shortly after the police brought Wiggins to the precinct, the defendant came into the station house. The defendant had scrapes on his right hand and elbow, a lump on his forehead, and dirt on his clothes, arms and face. When the defendant gave his name, he was arrested. The identification of Wiggins as a perpetrator, Wiggins' statement inculpating the defendant, and the defendant's physical condition when he appeared at the station house made it more probable than not that a crime had been committed and that the defendant was one of its perpetrators (cf. People v Gordon, 87 AD2d 636).

Additionally, there is sufficient support in the record for the finding by the hearing court that the showup identification of the defendant at the station house was accidental. The police officer who arrested the defendant initially handcuffed him to a railing in the same room in which Wiggins had been placed.

After being told by a superior officer to separate the two suspects, the arresting officer handcuffed the defendant to a railing in the front of the station house, near a desk. Meanwhile, Officer Green and the other eyewitness went to a hospital where Officer Green was treated for an injury that he had sustained while assisting in the arrest of Wiggins. When Officer Green and the other eyewitness entered the station house at approximately 2:30 A.M., they noticed the defendant handcuffed to the railing near the desk and identified him. The testimony of the other eyewitness, that no one directed her attention to the defendant, was uncontradicted. Moreover, there was no evidence that either of the eyewitnesses had any reason to believe that the police had apprehended any suspect other than Wiggins. Under the circumstances, the hearing court's finding that the showup was accidental was appropriate *(see, People v Prochilo,* 41 NY2d 759; *People v Burton,* 106 AD2d 652).

We have considered the defendant's other contentions and find them to be without merit. Lazer, J. P., Bracken, Brown and Lawrence, JJ., concur.